(Clark County, Ohio, Probate Court.)
J. QUINCY SMITH, Adm'r., v. JEN-
NIE HAYWARD.

(1). The order or finding made by pro-
bate court upon the final account of an
executor cannot be attacked or set aside
in a collateral action.

(2). When an order is made finding an
estate to be settled, the real estate passes
to the heirs or legatees, and such title
thereto cannot be attacked by a creditor
of the deceased while such order remains
undisturbed.

(3). When the administrator of such
heir or legatee brings an action to sell
such real estate to pay his debts, a cred-
itor of the testator or intestate is neither
a necessary or proper party defendant.

(4). An executor has no authority to
borrow money to pay debts of the testa-
tor, and if he does so, the person loaning
him the money must look to his individ-
ual responsibility to secure the same.

(5). If an executor borrows money to
pay debts of the testator, and then files
what purports to be a final account, in
which it is shown that in order to make
it a final balanced account, said executor
donates a large amount to said estate.
Can such creditor of the executor have a
standing in this court and be recognized
to file a motion to open up such account?
or to have the order thereon set aside?
Query?

(6). When a party is not a necessary
party to an action, and making him a
party will cause the consideration of
questions foreign to the original action,
and possibly, bringing in new parties
with new and different interests, such an
one should not be made a party.

(7). Especially is this true where such
application is not made until after judg-
ment had been rendered, and the court
has doubts as to its jurisdiction on merits
of applicant's cause.

ROCKEL, J.
In May, 1889, Benjamin Neff died tes-
tate seized of the premises in the petition
described, devising a ½ interest therein
to his son J. Grant Neff and the other
half to his widow, Harriet J. Neff. Charles
H. Neff qualified as executor of his
father's estate.

On June 24th, 1894, Charles H. Neff,
filed what purported to be a final account
and settlement of his trust.   This ac-
count was duly advertised and heard on
Oct. 1st, 1894, and as appears from the
journal entry made thereon, was accept-
ed as a full and final account.   The re-
ceipts and expenditures equaling each
other.

According to this finding, the estate of
Benjamin Neff was fully and finally
settled, and there was nothing due any
one from such estate.  It however ap-

peared in this account that Charles H.
Neff had paid out more in payment of
the debts of said Benjamin Neff than he
had received from the assets of the es-
tate. The account stated that the balance
needed in making receipts equal the ex-
penditures, was donated by said Charles
H. Neff and his mother, the widow of
Benjamin Neff.

No exceptions were ever filed to this
account or motion to set the same aside
or open up other than what appears
in the defendant's, Black's, answer and
cross-petition herein.

On Aug. 1st, 1894, after the filing of
this final account by Chas. H. Neff, J.
Quincy Smith as the administrator of J.
Grant Neff, filed his petition to sell the
real estate devised to said J. Grant Neff,
making all proper and necessary parties,
defendants.   About 6 months thereafter,
on January 19th, 1895, a finding thereon
was had in this court, and the premises
were orderd sold, and the allegations of
the petition averring that said J. Grant
Neff died seized in the premises, were
found to be true.

After considerable time had elapsed,
on Nov. 27th, 1895, said premises were
sold at public auction and the sale was
confirmed.  The proceeds of said sale are
still in court.  On February 1st, 1896.
John Black filed the following paper
herein:

State of Ohio, Clark county, Probate
Court.

### Answer.

J. Quincy Smith, Administrator de
bonis non of the estate of J. Grant Neff,
deceased, plaintiff, v. Charles H. Neff et
al., defendants.   No. 612.

Now comes John Black, defendant here-
in and leave of court being first had, files
this his answer and cross-petition, as
follows:

Defendant admits that J. Grant Neff
died seized of the legal title to the lands
in the petition described, but says he
was possessed of said legal title only,
and had no interest therein or any value
whatever, for that all of his interest there-
in was derived by devise from Benjamin
Neff, who died insolvent, said lands be-
ing wholly insufficient to pay the just
debts of said decedent.

### Cross-Petition.

By way of cross-petition herein this
defendant says that on the 8th day of
April, 1892, Charles H. Neff, co-defendant
herein, who was at the time the executor
of Benjamin Neff, deceased, borrowed of
this defendant $1000.00 and gave his note
therefor, which said note and the interest
thereon, excepting interest for one year,
is still due and unpaid; that said Charles
H. Neff as such executor as aforesaid, on
the 11th day of April, 1892, paid said
$1000.00 to D. M. Barrier of Dayton, Ohio,
on a note of said Benjamin Neff, deceased,
due to said Barrier, and said Charles H.

Neff took credit for said sum of $1000.00 on his account as executor aforesaid of said Benjamin Neff, deceased. Said $1000.00 so paid to said D. M. Barrier was a lien on the lands of Benjamin Neff deceased, which said lands were devised to plaintiff's decedent by Benjamin Neff, and are the same lands described in plaintiff's petition herein. That when said Charles H. Neff filed his final account as executor of the estate aforsaid, there was due to him a large sum, to-wit: $5156.27 for money advanced by him to pay the debts of said estate, of which said debts the aforesaid $1000.00 so paid said D. M. Barrier was one; that Charles H. Neff as such executor failed to sell the real estate of his decedent, and in fraud of his creditors of whom said John Black was one, said Charles H. Neff in his final account filed July 27th, 1894, included an item of credit of said estate of $5156.27 as donated by Harriet J. Neff and Charles H. Neff, $4056.27 of which purported to be and was donated by said Charles H. Neff, who at the time was largely and notoriously insolvent.

And afterwards to-wit: on the 6th day of September, 1894, said Charles H. Neff represented to this defendant that the estate of Benjamin Neff was indebted to him in the sum of more than $4000.00 for money advanced by him to pay debts of same, of which the $1000.00 furnished by this defendant was a part of said money so advanced, and the debt due D. M. Barrier so paid was one of said debts, and on said date said Neff executed and delivered to said Black a written transfer for $1000 of the above amount due him from said estate, of which transfer the following is a copy, to-wit:

New Carlisle, Ohio, September 6th, 1894.

For value received I hereby transfer and assign to John Black or order or assigns the sum of one thousand dollars of the money due me from the estate of Benjamin Neff, deceased, whether the same be due me by reason of the payment by me of debts of said estate as executor of said Benjamin Neff, deceased, or for any other reason or right whatever.

Chas. H. Neff.

The above transfer was made for the purpose of enabling said John Black to procure his money so furnished as aforesaid for the benefit of said estate of Benjamin Neff, deceased, and the plaintiff herein is seeking to appropriate the real estate of which Benjamin Neff died seized, to his own use for the purpose of paying the debts of a legatee of Benjamin Neff, deceased, in violation of the rights of this defendant and the creditors of said Benjamin Neff, deceased. This defendant further says the plaintiff in this action, J. Quincy Smith is, and for years past has been one of the officers of the New Carlisle Bank; that he was appointed administrator de bonis non herein at the instance and for the benefit of said bank.

That the lands in said petition described were sold by him and bought for said bank at much less than their real value; that the plaintiff and the officers of said bank at the time of the bringing of this action and long prior thereto, knew that Benjamin Neff was insolvent: that Charles H. Neff was insolvent, and that his pretended settlement of and donation to Benjamin Neff's estate was a fraud upon the creditors of said Charles H. Neff, and said bank is now claiming the money arising from the sale of the lands herein, well knowing that in justice and equity they are not entitled thereto.

By reason whereof this defendant asks that the account filed in this court by Charles H. Neff as his final account, be opened up, restated and corrected so as to show the true indebtedness from said estate to said Neff. That an administrator de bonis non be appointed of the estate of Benjamin Neff, deceased. That the sale of the lands herein be set aside, and ordered sold by said administrator so to be appointed. That this defendant be subrogated to all the rights of D. M. Barrier and Charles H. Neff in said lands and the funds arising from the sale thereof, and in the event the court should refuse to set aside the sale aforesaid, the defendant asks that the funds now in the hands of the court, arising from the sale of same, be paid to the administrator of Benjamin Neff, so to be appointed as aforesaid, to be distributed as above indicated, and that he may have such relief as he in justice and equity may be found entitled to.

Ellis H. Kerr Attorney for John Black.

State of Ohio, Clark county, ss.

John Black being sworn says the allegations in his foregoing answer and cross-petition are true as he verily believes.

John Black.

Sworn to before me by said John Black and by him subscribed in my presence this 2nd day of January, 1896.

(Seal.)                H. N. Taylor,
                        Notary Public,
                        Clark Co., O.

There was some objection made at the time to the filing of this cross-petition, claiming that the matters alleged therein, did not entitle Mr. Black to be make a party defendant. But he was finally permitted to file this answer and cross-petition with the understanding that the matter would be more fully investigated when considering the question upon demurrer which the court was informed the plaintiff would file to said answer and cross-petition.

The demurrer was filed, alleging three grounds,

1st. That the court has no jurisdiction of the subject matter of the action, set forth in said answer and cross-petition.

2nd. That there is a misjoinder of causes of action stated in said answer and cross-petition.

3rd.  That said answer and cross petition does not state facts sufficient in law to constitute a defense to the petition of the plaintiff herein.

These grounds will be considered together in the character of a general demurrer, which I think for the reasons following, ought to be sustained. At the time this petition was filed by the plaintiff, the account of Chas. H. Neff as executor of Benjamin Neff in full and final settlement of his trust, had been filed in this court, and thereafter, long before judgment was rendered in this cause and after due publication, it was approved and found by this court that said estate, had been fully settled.

By this finding, that the estate had been fully settled, the title passed free and clear to the devisees of Benjamin Neff, one of whom was J. Grant Neff, deceased.  As soon as the debts of Benjamin Neff were paid, the devisees under his will took a clear title.

It matters nothing to these legatees in the absence of clearly established fraud, who paid these debts.  If Chas. H. Neff of his own volition, paid these debts, the devisees could not have prevented him so doing.  If the defendant Black has an equity, for it is not claimed that it is anything more than an equity, in the funds arising from the sale of the real estate in question, it is by reason of some act of Chas. H. Neff, and not from any act of Benj. Neff, deceased, or J. Grant Neff, for it is not alleged that said Black had a debt against said Benjamin Neff, but merely that he advanced the money which was used by the executor in the payment of a certain debt against said estate.  It does not appear by the cross-petition that at the time said executor procured the money, from said Black, that he did it as executor, or that there was any agreement that said Black should be reimbursed from the funds of the estate of said Neff, or that it was necessary for said executor to procure said loan for the purpose of preserving the estate of said Benjamin Neff.

The inference is that the loan was made to Chas. H. Neff in his individual capacity, and no other fund or property was looked to as security for the same.  For the agreement or assignment set up in the cross-petition, in which Neff assigned to Black whatever claim there was due and owing him from the estate of Benj. Neff, was made after the account was filed.

Besides, an executor or administrator has no authority to borrow money to pay debts of the estate, and the debt therefore at the time of its creation could be none other than the individual debt of Chas. H Neff to John Black. And therefore, unless Black has same peculiar equity in the case, he stands upon the same plane as any ordinary creditor of Chas. H. Neff, and only has a right to what there might be due said Neff from Benj. Neff's estate.

In either case, however, before the title of J. Grant Neff can be affected, it will require the opening up and setting aside of the order made in this court approving the account hereinbefore filed, as the account of Chas. H. Neff, in final settlement of the estate of Benj. H. Neff. This can not be done in this action. Probate courts are courts of record in the fullest sense, and their records import absolute verity.  And when a matter properly within the jurisdiction of the court, has received the consideration of the court, and a finding is made thereon, such finding cannot be attacked or set aside in a collateral proceeding.

If such a proceeding or order is attacked or set aside, it must be done directly in an action for that purpose.

Therefore, so far as this action stands, it must proceed on the theory that the account filed in this court on June 24th, 1894, by Chas. H. Neff as executor of Benj. Neff, is correct, and that said estate was finally settled, and that at the time, the order of sale was made in the case at bar, the title to the premises in the petition described, vested in J. Grant Neff, or his legal representatives.

It may be that if the cross-petitioner Black, can show that the money he paid C. H. Neff went to and did pay off the debt of Benj. Neff's estate, that a court of equity in an action brought for that purpose and with all parties in interest properly before it, might decree it a lien therefor upon the fund arising from the sale of the land of the said Benj. Neff. But I do not think it can be done in an action of this kind.

This is an action to sell real estate of said J. Grant Neff to pay his debts, and the administrator was only bound to make such persons parties, as the records might disclose to have a lien on the premises, or such other parties as he might deem prudent to have brought in to adjudicate their claims in order to advance the sale of the premises. Until decreed so by a court of equity, the claim of John Black could not be a lien upon the premises in question.  Neither Grant Neff, the devisee, nor his father, the testator, incurred any obligation to John Black.  From no act of theirs could the basis be gathered upon which to ground a claim for a lien upon said land.  To them and their privies, the defendant Black is a stranger.

It may be admitted that it was the duty of Chas. H. Neff to sell the premises of Benj. Neff to pay his debts, and that if he paid the same, he was entitled to have the same sold to reimburse himself. But if the said Chas. H. Neff, as executor, does not choose to enforce this right, in what manner can an individual creditor of his compel him to do so?  Has

this court any jurisdiction in a case of that kind?

While not fully decided upon this question, I am inclined to believe that this court could not recognize the motion of an individual creditor for that purpose. Such a creditor would need to seek some other remedy through a court of general equity jurisdiction and in an original action, brought for that purpose.

This court will enforce the payment of the claims of creditors of deceased persons, but I do not believe that it will enforce a decedent's real estate to be sold to satisfy the demands of a stranger, or to satisfy the claims of a creditor of the executor of the estate.

Chas. H. Neff's action in filing his account as executor of Benjamin Neff as a final account and a full settlement of the estate, and his conduct towards defendant Black, is contradictory.

To Black he says: His father's estate is indebted to him; but in his account he says, this is not true, and makes no such demand. If Chas. H. Neff says there is nothing due him from his father's estate, and that his father's estate is fully settled, by what right can his creditors say this is not true?

The creditors of Chas. H. Neff are neither proper nor necessary parties to be considered in the administration of the estate of Benjamin Neff. If in the case at bar Chas H. Neff would have claimed in his account, that there was something due him, and then assigned the same to the defendant Black, Black might have had a stronger claim than he otherwise has.

But until the finding made in this court on the final account of Chas. H. Neff is set aside, there is nothing due him, and no right, claim or demand which he can assign or transfer. And the reasons which courts adopt for not attacking judgments of courts of record in any but direct proceedings, applies with all its force to this action.

The defendant Black seeks to strengthen his claim by the allegation that the money he loaned was used by said Neff in paying a claim against the estate of his father. But I doubt if he receives much strength from this source, from the fact that he did not rely or look to the estate of Benj. Neff for reimbursement, but solely to Chas. H. Neff in his individual capacity. Black was under no obligation to pay the debt due D. M. Barrier from the estate of Benjamin Neff, and therefore is not subrogated to any of the rights that D. M Barrier might have had against said estate.

Upon more mature reflection, I am inclined to believe that the court ought not to have permitted the defendant Black to file this answer and cross-petition.

It will be conceded at once that Black was not a necessary party in any sense whatever to this action. At most he could only have been a proper party, and the admission of a proper party to an action lies in the sound discretion of the court.

While the supreme court has held in the case of Doan v. Bitely, 49 Ohio St., 588, that the action of an administrator to sell real estate is a civil action within the meaning of the code, and therefore the rules of practice of the code apply to such actions, the object and purpose of this kind of an action should not be lost sight of, nor the statute specially applicable thereto, which provides who are necessary parties.

Within the provision of sec.6142, R. S., Black is not a necessary party, to this action. In Hiller v. Stewart, 16 Ohio St., 658, it is said: "All the parties necessary or proper to a complete determination of the questions included in the original action were brought in at its commencement, and therefore, against the objection of the original parties, it was improper to admit into this case plaintiffs in error, as defendants, for the purpose of testing by way of cross-petition what could not be determined without the presence of still other parties, who claim no interest in the subject matter of the original action.

If all the matters are gone into as prayed for in the defendant's answer and cross petition, this court would be compelled to determine a large number of matters foreign to the original action in this case. It would need to determine whether or not the account of Chas. H. Neff was proper: whether said Chas. H. Neff was insolvent; whether the assignment of his claim to said Black was valid.

The proper consideration would bring into this case all creditors of Chas. H. Neff: all devisees and creditors of Benj. Neff and creditors of J. Grant Neff. This would add a greater complication to the original action than I think it ought to sustain under the surrounding conditions. Bartlett v. Patterson, 10 Bull., 371. In discussing sec. 571 of the code as to the defense the defendant may set up, the court says: "But that is not the position of Strong & Carey; they say, 'we want the court first to find us a lien and then turn around and enforce the lien.' Now I have found nothing in the section of the code, broad enough to allow this".

This is quite similar to the position of Black, who wants the court to find that he has a lien, and then provide means of enforcing it. The application of Black was not made until long after judgment was rendered and the premises ordered sold. Therefore the language of the court in Henry v. Jeans, 48 Ohio St., 456, is applicable. Here it is said "From this section (5114) may be derived the power in special cases to make new parties after judgment, that there may not be a failure of justice. It is a power, however, that

will be sparely executed and with a cautious discretion.''

The answer and cross-petition of Black brings so many new elements into this action not necessary to determine the matter brought forth by the petition, that the exercise of a cautious discretion will hardly justify permitting him to be made a party to this action.

Besides, Black has hardly exercised that degree of diligence which commends itself favorably to a court of equity. Living in the same vicinity, and being acquainted with all the parties, he suffered more than 18 months to elapse after Chas. H. Neff had filed his final account and J. Quincy Smith as administrator of J. Grant Neff had begun this case, and even two months after the premises were sold at public auction, before he attempted to enforce his alleged rights in the premises.

All things therefore considered, I think the demurrer should be sustained, and if Black desires to further prosecute his action, let him do so in an original action in a court of competent jurisdiction.

Horace Stafford, for plaintiff.

E. H. Kerr, for Black.